Filed 3/12/15  P. v. Salazar CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B257524 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA053935) |
| v. | |
| FERNANDO RUIZ SALAZAR, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Roger Ito, Judge.  Affirmed.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Brendan Sullivan, Deputy Attorney General, for Plaintiff and Respondent.

Law Offices of Paul C. Supple and Paul C. Supple, under appointment by the Court of Appeal, for Defendant and Appellant.

_____

Fernando Ruiz Salazar entered guilty pleas in 1999 to making a criminal threat (Pen. Code, § 422)[1] and carrying a loaded firearm in a vehicle (former § 12031, subd. (a)(1)). His pleas were the product of an agreement with the prosecution, which called for dismissal of additional charges of stalking (§ 646.9, subd. (a)) and being an occupant with a concealed firearm in a vehicle (former § 12025, subd. (a)(3)). Under the terms of the case settlement agreement, Salazar received a two-year state prison sentence with execution of sentence suspended, and a grant of probation on various terms and conditions. Salazar successfully completed probation, but is now subject to deportation proceedings based on the convictions.

In 2013, Salazar filed an unsuccessful motion to set aside his conviction pursuant to section 1016.5. Salazar appeals from the denial of the motion, arguing that (1) he did not have a Spanish language interpreter at the time of his plea, (2) he did not understand the immigration consequences of pleading guilty, and (3) had he known of the potential for deportation he would have elected to stand trial rather than settle the case.

## BACKGROUND

Salazar was held to answer following a preliminary hearing held on May 11, 1999. Salazar was assisted by a Spanish language interpreter at the preliminary hearing.

Salazar entered his guilty pleas on June 21, 1999, without the services of an interpreter. The agreed upon sentence was imposed on July 20, 1999. A minute order dated December 10, 2001, indicates that Salazar appeared in court on that date, assisted by a Spanish language interpreter and represented by counsel. The trial court terminated probation and dismissed the case pursuant to section 1203.4.

---

[1] All statutory references are to the Penal Code, unless otherwise indicated.

2

On February 26, 2008, Salazar filed his first motion to vacate his plea due to immigration consequences.[2] The 2006 motion states that Salazar "now faces deportation and exclusion proceedings and is not eligible to adjust his resident status." This motion was made on the ground that none of the attorneys, the trial court, or Salazar, were aware his plea would result in deportation. The 2006 motion makes no mention of Salazar's need for an interpreter at the time of his plea. The superior court file does not contain a minute order reflecting a ruling on the motion. The absence of a ruling indicates the 2006 motion was not granted.

A second motion to vacate Salazar's plea due to its immigration consequences was filed on April 14, 2011. The 2011 motion, deemed a non-statutory motion to vacate, argued Salazar received ineffective assistance of counsel at the time of his plea. Salazar asserted in a declaration that trial counsel assured him his plea would not result in deportation because execution of the two-year state prison sentence was suspended. His motion makes no reference to the lack of an interpreter at the time of his plea. The superior court file does not indicate a disposition on the 2011 motion, but we again infer it was not granted considering that Salazar filed a third motion to vacate his plea in 2013 in the instant proceeding.

On September 12, 2103, Salazar filed the instant motion to vacate his plea pursuant to section 1016.5, which was supported by Salazar's declaration and various documents. Salazar declared that he did not have an interpreter at the time he signed the plea form, which included an English language version of the immigration consequences of the plea. The trial court did not inquire into his immigration status in the plea colloquy and Salazar does not recall being told of the consequences of the plea. Salazar declared that, he did not understand he could be removed from the country as a result of his plea.

Salazar further declared that he is a native of Mexico, who arrived in the United States in 1989. Spanish is his native language; he did not speak English on arrival in the

---

[2] We notified the parties of our intent to take judicial notice on appeal of Salazar's previous motions to vacate his plea filed on February 26, 2008, and April 14, 2011.

country. He received a GED after taking classes conducted in Spanish. He communicated in Spanish at work. He did not have sufficient English proficiency to enter into the plea agreement without an interpreter.

Salazar declared that had he known of the immigration consequences of his plea, "I would have challenged the allegations against me with the variety of defenses availed to me at the time, and I would not have pleaded accordingly. . . . I would have never pleaded guilty to the allegations against me."

Salazar declared that he had filed an unsuccessful motion to vacate his plea in April 2008, based on advice of his previous immigration attorney. That motion argued Salazar received ineffective assistance of counsel. It was not until he consulted with his current immigration attorney that he "discovered a serious and prejudicial legal flaw in my conviction proceedings . . . ."

The exhibits submitted in support of Salazar's section 1016.5 motion establish the following circumstances. The plea and waiver form initialed and signed by Salazar included the following immigration admonition: "I understand that if I am not a citizen of the United States, the conviction for the offense charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Salazar signed the plea and waiver form to signify that he had "personally initialed each of the above boxes and discussed them with my attorney. I understand each and every one of the rights outlined above and I hereby waive and give up each of them in order to enter my plea to the above charges." Salazar's trial counsel also signed the form, indicating that he had "explained each of the above rights to the defendant, and having explored the facts with him/her and studied his/her possible defense to the charge(s), I concur in his/her decision to waive the above rights and to enter a plea of guilty."

Police reports from the 1999 incident leading to Salazar's prosecution were submitted as exhibits to the motion. The reports detail Salazar's stalking and threatening of his estranged wife, including an incident in which he brought a loaded handgun to her residence, intending to scare her. Independent witnesses verified Salazar's conduct,

4

including possession of the firearm. Salazar was admonished of his *Miranda*[3] rights in Spanish, and questioned by a Spanish speaking officer. Salazar admitted acrimonious contacts with his estranged wife and possession of the loaded firearm. Four letters from persons familiar with Salazar were submitted, declaring under penalty of perjury that Salazar primarily speaks Spanish and his English was very limited in 1999.

## HEARING ON THE MOTION AND RULING

Salazar's section 1016.5 motion was heard on October 1, 2013. The prosecutor advised the court there had been previous motions filed on Salazar's behalf as early as 2011.[4] These earlier motions were repeatedly taken off calendar and continued by former counsel, who would then tell the immigration court there was a pending motion in state court, which delayed the immigration proceeding. The prosecutor directed the court's attention to minute orders going back to Salazar's arraignment showing that there were several hearings in which Salazar did not use a Spanish language interpreter. The prosecutor urged the court to apply the presumption that official duty was properly performed when Salazar appeared without the assistance of an interpreter. The prosecutor asserted that Salazar's motion is untimely under *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183 (*Zamudio*), because Salazar had been aware of his immigration issues since 2011. The prosecutor pointed out that Salazar's moving papers failed to state when he learned of the immigration consequences, but he was aware of the consequences as early as 2008.

Salazar's attorney responded that he did not know when Salazar became aware of the immigration consequences. He argued there was never a proper advisement because there was no interpreter for the plea. Salazar's need for an interpreter is demonstrated by

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

[4] The prosecutor stated the previous motion was filed in 2011, but at a later point referred to a motion from 2008.

the fact that Salazar had an interpreter at the preliminary hearing. Salazar's previous immigration attorney made motions but did not follow through, using those motions to obtain continuances of the immigration proceedings. Current counsel argued that the 2013 motion is the first time Salazar has raised the issue of the lack of an interpreter.

The prosecutor responded that Salazar's counsel still did explain when Salazar became aware of the immigration consequences of his 1999 plea, and Salazar's knowledge appears to go back many years. In addition, Salazar has to establish prejudice, and he has not refuted that witnesses saw him with a firearm and he admitted having it. Salazar was stalking his wife after a breakup, and given the record, it is unlikely he would bypass a favorable plea agreement.

The court noted that *Zamudio*, *supra*, 23 Cal.4th 183 requires a party moving to set aside a plea to establish prejudice, but that deportation proceedings are not the type of prejudice contemplated. Salazar failed to meet his burden of establishing prejudice. In addition, Salazar failed to raise the issue of the absence of an interpreter until many years after the fact, without establishing good cause for failing to act sooner.

## DISCUSSION

Salazar contends on appeal that his plea was not entered voluntarily and intelligently, because he was not assisted by a Spanish language interpreter. In addition, Salazar did not understand the immigration consequences of his pleas, again due to the lack of an interpreter. The court misapplied the test of prejudice under *Zamudio*, *supra*, 23 Cal.4th 183, and *People v. Martinez* (2013) 57 Cal.4th 555 (*Martinez*). Not only did the court apply the wrong test of prejudice, Salazar's estranged wife recanted her allegations at the preliminary hearing, suggesting that Salazar would not have plead guilty had he been made aware of the immigration consequences. Because he was never told the immigration consequences in his native language, and he is subject to deportation immediately upon his plea, Salazar has established prejudice.

6

**Standard of Review**

"An order denying a section 1016.5 motion will withstand appellate review unless the record shows a clear abuse of discretion. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192, citing *People v. Shaw* (1998) 64 Cal.App.4th 492, 495-496 [(*Shaw*)]; see also section 1016.5, subd. (c).) An exercise of a court's discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice constitutes an abuse of discretion. (*Shaw, supra,* at p. 496.)" (*People v. Limon* (2009) 179 Cal.App.4th 1514, 1517-1518.)

**Penal Code Section 1016.5**

A trial court ruling on a motion under section 1016.5 engages in a three-part analysis. The trial court determines whether (1) "it formerly had failed to advise defendant as section 1016.5 requires," (2) as a result of the conviction the "defendant actually faces one or more of the statutorily specified immigration consequences," and (3) the "defendant was prejudiced by the court's having provided incomplete advisements." (*Zamudio*, *supra*, 23 Cal.4th at p. 200.)

"Penal Code section 1016.5 requires that before accepting a plea of guilty or nolo contendere to any criminal offense, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the offense may result in deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. (Pen. Code, § 1016.5, subd. (a).) [Fn. omitted.] If the advisement was not given, and the defendant shows that conviction of the offense to which he or she pleaded guilty or nolo contendere may result in adverse immigration consequences, the court, on the defendant's motion, is required to vacate the judgment and permit the defendant to withdraw his or her plea and enter a plea of not guilty. (*Id.,* subd. (b).) Relief will be granted, however, only if the defendant establishes prejudice. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 210 (*Zamudio*).) As we

7

explained in *Zamudio,* prejudice is shown if the defendant establishes it was reasonably probable he or she would not have pleaded guilty if properly advised. (*Ibid.*)" (*Martinez, supra,* 57 Cal.4th at pp. 558-559.) "[B]ecause the question is *what the defendant would have done,* relief should be granted if the court, after considering evidence offered by the parties relevant to that question, determines the defendant would have chosen not to plead guilty or nolo contendere, even if the court also finds it not reasonably probable the defendant would thereby have obtained a more favorable outcome." (*Id.* at p. 559.)

**Analysis**

### *The Need for Assistance of an Interpreter*

The initial determination for a trial court in ruling on a motion under section 1016.5 is whether a defendant was adequately advised of the immigration consequences of the plea. Salazar does not contend that the waiver form inaccurately describes the immigration consequences of his plea. He instead argues he was not advised of those consequences because he was not provided a Spanish language interpreter.

The record is ambiguous as to whether the trial court's ruling was based on a credibility determination that Salazar had a sufficient command of the English language to proceed with his pleas. In finding an absence of prejudice, the trial court may have found that Salazar did not require the assistance of an interpreter. There is substantial evidence to support this conclusion. Our review of the reporter's transcript of the guilty pleas, conducted entirely in English, contains no suggestion that Salazar has any difficulty with the English language. All of his answers during the plea colloquy were clear and responsive. The transcript suggests Salazar had a complete understanding of the proceedings, his rights, and the proposed settlement.

However, because the record is ambiguous as to the basis of the trial court's finding on prejudice, we address the remaining issues related to the denial of the section 1016.5 motion.

*Prejudice as defined in Zamudio and Martinez*

The trial court did not abuse its discretion in determining that Salazar failed to carry his burden of establishing prejudice. "Whether defendant was prejudiced by the trial court's incomplete advisements is a factual question, appropriate for decision by the trial court in the first instance. [Citations.]" (*Zamudio*, *supra*, 23 Cal.4th at p. 210.) "[T]he defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised. It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances." (*Martinez*, *supra*, 57 Cal.4th at p. 565.)

The circumstances in this case provide a reasonable basis for the trial court's rejection of Salazar's uncorroborated declaration that he would have gone to trial had he known the immigration consequence of his plea. The police reports supporting the charges against Salazar were before the trial court on the section 1016.5 motion. Those reports, largely based on statements from independent witnesses, established Salazar's complicity in the charged offenses, including the potentially deadly combination of firearm offenses along with criminal threats and stalking his estranged wife. Salazar admitted to the police that he had gone to his estranged wife's residence in possession of a loaded firearm. In view of Salazar's dismal prospects of success at trial, the trial court could reasonably conclude that he would have accepted the favorable case disposition regardless of the immigration consequences. (See *Martinez*, *supra*, 57 Cal.4th at p. 564 [the probability of success at trial is not irrelevant to the issue of prejudice, as a defendant may accept a plea bargain over the probable consequences of going to trial].)

We disagree with Salazar's argument that the trial court misapplied the reasoning in *Martinez* by basing its prejudice determination on Salazar's likely success at trial. Nothing in the comments of the trial court supports Salazar's interpretation of the court's ruling. Unlike the situation in *Martinez*, the trial court here did not even mention

9

"whether defendant would have received a more favorable outcome had he rejected the plea bargain." (*Martinez*, *supra*, 57 Cal.4th at p. 561.)  The trial court made no connection between the issue of prejudice and Salazar's potential for success at trial.  The court expressly acknowledged that the burden was on Salazar to establish prejudice, and "[u]nder these circumstances, I don't see that burden having been borne by Mr. Salazar." The court specifically found that Salazar had not "borne the burden of showing that there was actual prejudice with regard to this plea . . . ."

### *Diligence*

In addition to finding that Salazar failed to establish prejudice, the trial court further ruled that the lack of an interpreter at the time of the plea "is an issue that was brought up many years after the fact.  And at this juncture, I don't find a good cause reason for that issue not having been brought forth previously."

Reasonable diligence is required of a defendant moving for relief under section 1016.5.  (*People v. Totari* (2003) 111 Cal.App.4th 1202, 1207.)  "[T]he issue of diligence is particularly fact dependent" and a reviewing court may rely on judicially noticed evidence that is "relevant to a determination of whether defendant exercised reasonable diligence in bringing his motions." (*Id.* at pp. 1208-1209.)  However, section 1016.5 contains no express time bar, and it is unfair to find a lack of reasonable diligence until the defendant had cause to question the accuracy of the immigration advisements. (*Zamudio*, *supra*, 23 Cal.4th at pp. 203-204.)

At the hearing on Salazar's 2013 motion, both the prosecutor and Salazar's attorney made reference to earlier motions under section 1016.5.  However, the earlier motions are not contained in the original record on appeal, and counsel's representations about prior motions are not evidence the motions were made or considered.  "It is axiomatic that the unsworn statements of counsel are not evidence. (See, e.g., *In re Heather H.* (1988) 200 Cal.App.3d 91, 95 ['unsworn testimony does not constitute "evidence" within the meaning of the Evidence Code']; *People v. Lee* (1985) 164

10

Cal.App.3d 830, 841 [same]; *People v. Superior Court* (*Crook*) (1978) 83 Cal.App.3d 335, 341 [statements by counsel are not evidence]; see also Rules Prof. Conduct, rule 5–200(e) [attorneys must not 'assert personal knowledge of the facts at issue, except when testifying as a witness'].)" (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11.)

Because the record does not contain all the documents referred to by counsel, this court has the option to summarily affirm on the basis that Salazar failed to present a complete record for appellate review. (*Foust v. San Jose Const. Co., Inc.* (2011) 198 Cal.App.4th 181, 187 [appellate court presumes the judgment of the trial court is correct in the absence of a complete record demonstrating prejudicial error].) Again, out of an abundance of caution and with an appreciation for the consequences of denial of the section 1016.5 motion, this court on its own motion obtained the superior court file, and after giving notice to the parties, we take judicial notice of the relevant documents that are otherwise absent from the record on appeal. (Evid. Code, §§ 452, subd. (d), 459, subds. (a) & (c).)

The superior court file reflects that Salazar was aware of the immigration consequences of his plea no later than 2008, when the first motion to vacate the plea was filed. Salazar's own declaration filed in 2008 stated he was facing deportation. A five-year delay in raising the issue of the lack of an interpreter at the time of plea supports the trial court's finding that Salazar failed to act with due diligence. The trial court's finding on this issue is not an abuse of discretion.

11

**DISPOSITION**

The order denying the motion to vacate the plea is affirmed.


KRIEGLER, J.

We concur:


TURNER, P. J.


GOODMAN, J. *

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.